EVAN J. TVEDT v. HENRY W. WHEELER.[1]

November 19, 1897.

Nos. 10,694—(109).

Freight Elevator—Failure of Landlord to Fence Wheel Hole—G. S. 1894, § 2250.

The defendant was the owner of a warehouse which he built and equipped with a freight elevator, operated by water pressure for use in such building. At one end of the elevator shaft was a wheel hole or opening in the floor, through which ran an endless cable over a movable pulley, for the purpose of raising and lowering the elevator. This wheel hole, including the pulley and cable, was a part of the elevator and of the building itself. They were dangerous, if not guarded; but the defendant never fenced or protected them, although it was practicable to do so. He leased the building for a warehouse, and the lessee continued to use it with the wheel hole unguarded. The plaintiff, an employee of the lessee, was injured because the wheel hole was not protected. *Held*, construing G. S. 1894, § 2250, relating to the protection of employees, that the initial duty rested upon the defendant to guard the wheel hole before using the building himself, or leasing it to another for use as a warehouse, and that he was liable to the plaintiff, who was injured by his neglect to comply with the statute.

Same—Contributory Negligence.

*Held*, that the evidence does not show, as a matter of law, that the plaintiff was guilty of contributory negligence.

Same—Evidence.

*Held*, that the trial court did not err in receiving evidence as to the customary way of sending the elevator up and down in the warehouse in question, nor in receiving evidence as to the cost of guarding the wheel hole, nor in modifying certain requests of the defendant for instructions to the jury.

[1] Reported in 72 N. W. 1062.

70 M.—11

Appeal by defendant from an order of the municipal court of Duluth, Edson, J., denying a motion for a new trial after a verdict of $350 for plaintiff. Affirmed.

*Allen, Baldwin & Baldwin,* for appellant.

A lessor of premises wholly in possession of the lessee is not liable to the employees of the latter. Harpel v. Fall, 63 Minn. 520; Schip v. Pabst, 64 Minn. 22; Fellows v. Gilhuber, 82 Wis. 639, 52 N. W. 307; Perez v. Rabaud, 76 Tex. 191; McLean v. Fiske, 158 Mass. 472; Szathmary v. Adams, 166 Mass. 145. And the rule applies to the operation of elevators. Freeman v. Hunnewell, 163 Mass. 210; Olson v. Schultz, 67 Minn. 494. Inasmuch as G. S. 1894, § 2250, imposes a continuous duty, it refers only to parties in possession and control; an intention to change the common law will not be presumed. Sutherland, St. Const. § 289 et seq. There is no reason why elevator holes should be fenced if the building is not used, for there would be no employees to be protected. Gibson v. Leonard, 143 Ill. 182; Lee v. Smith, 42 Oh. St. 458. Any man of ordinary intelligence must know that wire cables and movable pulleys are dangerous; the employee is bound to inquire. Bailey, Mast. Liab. 116.

The chief test of contributory negligence is the capacity of plaintiff to understand the danger and his duty regarding the same. Sauer v. Union, 43 La. An. 699; Dandie v. Southern, 42 La. An. 686; Haven v. Pittsburgh, 151 Pa. St. 620; Cunningham v. Chicago, 17 Fed. 882; McCarthy v. Lehigh, 48 Minn. 533; McCallum v. McCallum, 58 Minn. 288. In undertaking work not properly his at the request of a fellow servant plaintiff assumed the risks and was guilty of contributory negligence. Mellor v. Merchants, 150 Mass. 362; Osborne v. Knox, 68 Me. 49; Knox v. Pioneer, 90 Tenn. 546; Brown v. Winona, 27 Minn. 162; Freeberg v. St. Paul, 48 Minn. 99.

*John Jenswold, Jr.,* for respondent.

G. S. 1894, § 2250, imposed duties not specifically upon the owner or his agent, superintendent or other person in charge of the building, but it is nevertheless an absolute duty chargeable upon all. Osborne v. McMasters, 40 Minn. 103; Bott v. Pratt, 33 Minn. 323. For plaintiff to recover for negligence in performance of a statutory

duty he must show that he is within the class for whose benefit the legislation was designed; that there was a negligent violation of the statutory requirement by defendant, and that he suffered damages as a proximate result of such violation. 2 Jaggard, Torts, 918. Disobedience of a statute is per se negligence. Correll v. Burlington, 38 Iowa, 120; Indiana v. Barnhart, 115 Ind. 399; Jetter v. New York, 2 Abb. App. 458; Johnson v. Bruner, 61 Pa. St. 58; Couch v. Steel, 3 E. & B. 402, 414; Thomas v. Winchester, 6 N. Y. 397; Cooley, Torts, 654; Sherman & Redf. Neg. 4; Union v. McDonald, 152 U. S. 262; Atchison v. Reesman, 60 Fed. 370; Dickson v. Omaha, 124 Mo. 140; Hayes v. Michigan, 111 U. S. 228; Bartlett v. Roach, 68 Ill. 174. Leasing of the property by the person upon whom the statutory obligation rests does not exempt him from liability for failure to supply the safeguards required by the statute. Hayes v. Northern, 74 Fed. 279, 283; Willy v. Mulledy, 78 N. Y. 310; McLaughlin v. Armfield, 58 Hun, 376; Keith v. Granite, 126 Mass. 90; Gorman v. McArdle, 67 Hun, 484; Parker v. Barnard, 135 Mass. 116; McRickard v. Flint, 114 N. Y. 222.

Whether plaintiff observed the dangers about him or, in the exercise of reasonable care, ought to have done so, is a question for the jury; and it should consider his duties, the length of his service, the promptness of action required of him, and whether the repairing of or attending to the machinery was his duty. Carver v. Christian, 36 Minn. 413; Steen v. St. Paul, 37 Minn. 310; Deering, Neg. 198; Barbo v. Bassett, 35 Minn. 485; Olmscheid v. Nelson, 66 Minn. 61; Roux v. Blodgett, 85 Mich. 519; Johnson v. St. Paul, 43 Minn. 53. Risks are taken by most prudent men, and plaintiff is not to be debarred from recovery for doing what prudent men would ordinarily do under like circumstances. Kelly v. Southern, 28 Minn. 98; Corbin v. Winona, 64 Minn. 185. To justify a nonsuit on the ground of contributory negligence, the negligence must be so clear that neither by construction nor inference could the evidence warrant the opposite conclusion. Bennett v. Syndicate, 39 Minn. 254; Emery v. Minneapolis, 56 Minn. 460. The risks assumed are those ordinarily incident to the occupation, properly carried on, under like circumstances, known to plaintiff and voluntarily encountered. Bergquist v. Chandler, 49 Minn. 511. He does not assume increased risks and

dangers caused by the negligence of his employer, of whch he has no notice. Haas v. Balch, 6 C. C. A. 201; Lawson v. Truesdale, 60 Minn. 410. That he had the same means as his master of knowing his fellow servant's incompetence does not charge him with the assumption of the risk. Daly v. Sang, 91 Wis. 336. He may have known of defects and still recover, unless he also knew of the dangers attending them. Russell v. Minneapolis, 32 Minn. 230; Cook v. St. Paul, 34 Minn. 45; Wuotilla v. Duluth, 37 Minn. 153; Steen v. St. Paul, supra; Rolseth v. Smith, 38 Minn. 14; Hungerford v. Chicago, 41 Minn. 444; Robel v. Chicago, 35 Minn. 84; McDonald v. Chicago, 41 Minn. 439; Neubauer v. Northern, 60 Minn. 130.

Whether a particular act was within the servant's employment depends upon whether it was committed by the master's authority expressly conferred or implied from the nature of the employment and its incidents. It is a mixed question of law and fact referable to the peculiar facts and circumstances. Thiesen v. Porter, 56 Minn. 555; Voyer v. Dispatch, 62 Minn. 393; Monforton v. Detroit, (Mich.) 71 N. W. 586. If defendant's negligence was the proximate cause of the injury contributory negligence on part of a fellow servant is no defense. Franklin v. Winona, 37 Minn. 409. Defendant was bound to provide such safeguards as would meet the different conditions and duties required of employees by the custom obtaining in warehouses. Sather v. Ness, 42 Minn. 379. Proof of the general custom or the manner of doing the work is competent though not conclusive as to whether plaintiff's act was negligent. Flanders v. Chicago, 51 Minn. 193; Steffenson v. Chicago, 51 Minn. 531; Armstrong v. Chicago, 45 Minn. 85; O'Malley v. St. Paul, 43 Minn. 289; Larson v. St. Paul, 43 Minn. 423; Doyle v. St. Paul, 42 Minn. 79.

Assignment of error merely pointing out the error, which is not noticed anywhere in the argument or supported by authority, will not be considered on appeal. Neimeyer v. Weyerhaueser, 95 Iowa, 497; Minneapolis v. Firemen, 62 Minn. 315; Dodge v. McMahan, 61 Minn. 175. Admission of testimony of an expert to an act forbidden by statute is without prejudice to the defendant. Thompson v. Johnston, 86 Wis. 576.

The court is justified in using its own language to convey the same

idea that is contained in a request to charge. Dallemand v. Janney, 51 Minn. 514. An instruction asked and refused, but covered by a general charge, is no ground for error. Barbo v. Bassett, supra; Columbia v. National, 52 Minn. 224; Smith v. St. Paul, 51 Minn. 86; Delude v. St. Paul, 55 Minn. 63. When verbal inaccuracies or omissions in the charge are not called to the attention of the court, a general exception to the entire paragraph is insufficient. Dallemand v. Janney, supra.

START, C. J.

The defendant was and is the owner of a general storage and warehouse building in the city of Duluth, which he built and equipped with a freight elevator, operated by water pressure for use therein. The elevator shaft was in the middle of the building, and extended from the basement to the top story. To the north end of this shaft, and 8 or 9 inches distant therefrom, was a wheel hole or opening in the floor, 30 by 10 inches, through which was an endless wire cable, a part of the appliances of the elevator, that moved through a pulley two feet in diameter. As the elevator went up the pulley descended, and vice versa. It was entirely practicable to have a fence or guard around this wheel hole, pulley and cable without interfering with the operation of the elevator, but they were never so protected. There were no sides to the elevator. Such was the condition of the building and the elevator and its appliances on June 1, 1896, when the defendant and owner of the building leased it to the Duluth Van, Express & Storage Company for storage and warehouse purposes. On August 13, 1896, while the plaintiff was at work in the building for the lessee, he was injured by the unprotected pulley and cable, which passed through the wheel hole or opening in the floor. The accident happened on the third floor of the building. He had occasion to send the elevator down in response to a request from an employee on a lower floor, and for this purpose he went to the north side of the elevator and pulled the cable. In doing so he stood between the wheel hole and the elevator shaft with his back to the pulley and cable. As the elevator started down he started to walk out of the space between the hole and shaft, when the pulley came up and caught his coat, whereby he

was carried to the ceiling and dropped to the floor. He brought this action to recover for the injuries so received. Verdict for the plaintiff for $350, and the defendant appealed from an order denying his motion for a new trial.

1. The defendant claims that, as owner of the building, he is not liable to the employees of his lessee, while the latter is in possession thereof, for any injuries sustained by them by reason of any defects therein; that this case falls within the rule laid down in Harpel v. Fall, 63 Minn. 520, 65 N. W. 913.

It may be conceded, without so deciding, that such is the case, unless he is liable under the provisions of chapter 7, Laws 1893, entitled, "An act for the protection of employees." [2] It is insisted by the plaintiff that this statute imposed a duty upon the defendant with reference to his building for the protection and benefit of persons rightfully therein, and, if they are injured by his neglect to discharge the duty, he is liable to them. There is no question that where the statute prohibits the doing of an act, or imposes a duty upon one for the protection of individuals, if he disobeys the prohibition or neglects to perform the duty, he is liable to those for whose protection the statute was enacted for any damages resulting proximately from such disobedience or neglect. Baxter v. Coughlin, supra, page 1. The question, then, is, does this statute impose upon the defendant any duty which he has neglected, so as to bring him within the rule stated, and render him liable to the plaintiff under the special facts of this case? Section 3 of the act cited (G. S. 1894, § 2250), so far as here material, is in these words:

"All hoistways, hatchways, elevator wells and wheelholes in factories, mills, workshops, storehouses, warerooms or stores shall be securely fenced, enclosed or otherwise protected and due diligence shall be used to keep all such means of protection closed."

Section 1 of the act (G. S. 1894, § 2248) also provides, among other matters, that all cables and dangerous places in and about factories, workshops, and public and private works, near to which an employee is obliged to pass, shall be fenced or otherwise protected.

No claim is made by the defendant that the wheel hole, pulley and

[2] G. S. 1894, §§ 2248–2264.

cable in question are not required by the statute to be guarded, but his claim is that the duty is only imposed upon those in possession of the building, operating its appliances and machinery, and having employees; that nothing is said in the statute as to who should dis-charge the duty imposed, and, it being a continuous duty, it is reasonable to infer that the statute refers only to parties in possession or control of the building, either as owner or lessee. There is force in the suggestion. It is not, however, necessary in this case to decide whether the continuous duty rests upon the owner of the building of seeing that the appliances, fixtures and permanent machinery of his building are properly protected or guarded as required by the statute, after he has parted with the possession thereof to the lessee.

The question arising upon the facts of this case is whether the owner of the building, who, while the building is in his possession, neglects to comply with the statute, as to dangerous appliances which it is practicable to guard and which are a part of the building itself, who turns it over to his lessee with no fence or guard about such appliances, is liable to an employee of the lessee, who is injured by reason of the fact that no guard was ever placed around them by either the owner or the lessee.

The purpose of the statute is plain. It was intended to guard human life and protect human bodies from being mangled. It is a police regulation founded upon sound public policy, and courts ought not to strain or restrict by construction its language so as to impair its useful operation. It should be construed so as to effec-tuate the wise and humane purposes of its enactment. While the statute does not impose the duty of guarding such appliances upon the owner by name, its terms being positive and sweeping that such appliances shall be so guarded, yet there is no reason why the owner of a building should not be required to comply with the statute, as to such dangerous appliances as are a part of his building, before he delivers the possession of the building to his lessee; and we so hold. The duty, in the first instance, rests upon the owner to construct guards about such appliances, even if it should be held that the con-tinuous duty rests upon the lessee to keep them guarded while they are in his exclusive possession and control.

Statutes of other states, somewhat similar to our own, have been

construed as applicable to the owner, although the duty was not specifically imposed upon him. Thus, a Massachusetts statute (section 5, c. 260, St. 1872) provided in general terms, without placing the duty upon any one in particular, that in any building in Boston, in which there should be placed any hoisting elevator or wellhole, it should be protected by a railing. A police officer, who entered such a building in the discharge of his duty and fell through an unguarded elevator well, brought an action against both the owners and occupants of the building for his injuries so sustained. The trial court found for the defendants. The case was reversed on appeal, the supreme court holding that the defendants were liable under the statute. The court, however, did not consider the respective duties of the owners and occupants. Parker v. Barnard, 135 Mass. 116.

A New York statute[3] declared in general terms that any building occupied, or built to be occupied, as a manufactory should be provided with a fire escape. This statute was considered in the case of McLaughlin v. Armfield, 58 Hun, 376, 12 N. Y. Supp. 164, which was an action by an employee of the occupant of a building built to be occupied as a factory against the owner thereof, on account of his neglect to equip the building with a fire escape, whereby the plaintiff was injured. The defendant claimed that because the statute did not, in terms, impose the duty upon the owners of such building, it could not be placed upon them by a judicial construction of the law. The court, however, held that the initial duty rested upon the owner, and held him liable.

In the case at bar the wheel hole included in the term "the pulley and cable" was a part of the building itself, a necessary part of the elevator, and there was no reason why the defendant should not have complied with the statute before parting with the possession of the building to his lessee. The initial duty rested upon him to guard the wheel hole as required by law. He could not evade the duty by leasing the building. House v. Metcalf, 27 Conn. 631.

2. The defendant further claims that the evidence conclusively shows that the plaintiff was guilty of contributory negligence.

3 Laws 1888, c. 583, tit. 14, § 16 (p. 1028).

Negligence is rarely a question of law. This case, however, is a border one. The narrow place between the wheel hole and the elevator shaft, upon which the plaintiff stood when he pulled the cable to send the elevator down, was a dangerous place. There was a nearer cable which he might have used, and a safe and convenient place to stand upon. Had he known this fact, and appreciated the danger of standing where he did stand in order to reach the cable he did use, there would be but little doubt that the question of his negligence was one of law and that he could not recover. But he had been employed in the building only three days when the accident happened, and there is evidence tending to show that he was ignorant of the safest way to handle the elevator; that he had received no instructions in the premises, except that he was told that the cable that he used was the one that controlled the movements of the elevator; and that he did not appreciate the danger to which he exposed himself in starting the elevator from the place selected by him. Upon the whole evidence the question of the plaintiff's contributory negligence and whether he was within the scope of his employment when injured was one of fact for the jury. The evidence justifies the verdict in his favor upon those issues.

3. The defendant also claims that the trial court erred in receiving testimony over his objections tending to show that it was the custom in the warehouse in question that, if the elevator was wanted on another floor than the one at which it was standing, the employees wanting it would call to the man on the floor where the elevator was, who would send it up or down, as the case might be. This evidence was competent upon the question of the plaintiff's negligence and whether he was in the line of his employment when injured. Sather v. Ness, 42 Minn. 379, 44 N. W. 128. It was not error to admit evidence as to the cost of putting a guard around the wheel hole. It had a tendency to show that it was feasible to guard the hole, pulley and cable. The point is also made by defendant that the plaintiff's injury was the result of the negligence of his fellow servant who directed him to send down the elevator,—a matter he did not understand. The proximate cause of the plaintiff's injury was the failure to guard the wheel hole, and, even if the negligence of a fellow servant combined with that of the defendant to

produce the injury, it does not defeat a recovery. Franklin v. Winona, 37 Minn. 409, 34 N. W. 898.

The defendant assigns as errors that the court erred in modifying his fourth, fifth and seventh requests for instruction. All of the fourth was given, to which the court added a further instruction of its own which in no manner modified the request as given. The fifth was not a correct statement of the law. It was to the effect that the burden was upon the plaintiff to establish all of the issues, including the absence of contributory negligence, by a preponderance of evidence. The court, instead of refusing the request, as it might have done, modified it so as to except the absence of contributory negligence from the issues which the plaintiff must establish by a preponderance of evidence. The language of the modification was, possibly, not happily chosen; but, taken in connection with all that the court said upon the question of contributory negligence and the burden of proof, it was sufficiently clear and explicit. It was not error to give it as modified. The seventh request was properly modified.

The evidence in this case left the question whether the plaintiff was negligent in not asking instructions as to the handling of the elevator one of fact, not of law.

Order affirmed.

COLLINS, J.

I concur in the conclusion reached by the CHIEF JUSTICE.

The statute provided that all hoistways, hatchways, elevator wells and wheel holes in factories, mills, workshops, storehouses, warerooms or stores should be securely fenced, enclosed or otherwise protected; but it failed to designate who should fence, enclose or otherwise protect these particular places. It imposed a duty, but it omitted to specify by whom the duty should be performed. The defendant erected the building in question for a warehouse or storehouse, and in it he placed the wheel hole, with its pulley and cable which caused the injury to plaintiff. Buildings of this particular character or description were specially mentioned in the statute and so were wheel holes. It seems to me that, when the duty to protect wheel holes in buildings of this nature was imposed, it was pri-

marily upon the owners of such buildings,—the persons who erect them,—and that the duty is not delayed or postponed until the building may be used or occupied for that special purpose. If, prior to the leasing of this building and its occupancy by the tenant, a person rightfully therein had been injured by reason of the unprotected wheel hole, as was plaintiff, the owner would not be heard to say that no statutory duty rested upon him to guard the place. If this be so, how can it be held, logically, that defendant owed no statutory duty to his tenant's employees in respect to the hole?

MITCHELL, J. (dissenting).

The defendant, as owner, constructed a building designed for use as a warehouse or storehouse, which he equipped with a freight elevator. At one end of the elevator well was a wheel hole or opening in the floor, through which ran an endless cable over a movable pulley for the purpose of raising or lowering the elevator. Defendant did not place any fence, guard or protection around the elevator well or wheel hole. He rented the building in this condition to an express and storage company, which used it for storage and warehouse purposes. It is fair to presume that the defendant knew that the express company intended to use it for such purposes, but the lease contains no stipulation as to what uses the building was to be put,—a fact, however, which is probably immaterial for present purposes. The lease contained no covenant that the defendant should make any changes or repairs in the building, which was in the exclusive possession and control of the lessee. The express company used the building as a warehouse, without placing any fences or guards around, or otherwise protecting, the elevator well and wheel hole; and as a consequence the plaintiff, one of its employees, was injured. The statute provides:

"All hoistways, hatchways, elevator wells and wheel-holes in factories, mills, workshops, storehouses, warerooms or stores shall be securely fenced, enclosed or otherwise protected." G. S. 1894, § 2250.

It is clear that there was a failure to perform a statutory duty designed for the protection of employees and others lawfully employed in the warehouse. The question is upon whom was that duty im-

posed? or, to state the question in another form, is the defendant upon the facts stated liable for its nonperformance? It seems to me that there cannot be any doubt that, if common-law principles are to obtain, the defendant is not liable. The case would come squarely within the doctrine of Harpel v. Fall, 63 Minn. 520, 65 N. W. 913.

As respects the person upon whom the duty devolves, it can make no difference whether the duty is one imposed by statute or by common law, unless the statute imposing the duty itself changes the rule. Statutes are not to be presumed to alter the common law, further than they so declare, expressly or by clear implication. The statute gives no right of action against any one, except as that right is implied by the imposition of the duty. In the present case the statute imposes a duty, but is entirely silent as to whose the duty is. There is nothing in the language of the act implying or indicating an intention to change the common-law rule. The words, "factories," "mills," "workshops," "storehouses," etc., are not synonymous with buildings constructed and fitted for such purposes. They only become factories, mills, etc., within the meaning of the statute, when used. If a building be constructed and fitted for use as a factory, but is never so used, it would not be a "factory," while, on the other hand, if it was not constructed for a factory, but was in fact used for that purpose, it would be a "factory," within the meaning of the statute. Lee v. Smith, 42 Oh. St. 458.          •

The evident intention of the legislature was to protect employees and licensees in buildings, when used for the purposes specified. It is the use of the building, and not the mere design of the owner in constructing it, which creates the duty of protecting hatchways, elevator wells, etc. These suggestions are made for the purpose of showing that there is nothing in the statute indicating an intention to change the common-law rule of liability. The act being thus absolutely silent as to whose duty it is to guard elevator shafts, etc., the presumption must be that the legislature intended to leave that to be determined by the common-law rule. If it be asked what the statute, thus construed, accomplishes, the plain answer is that it imposes an absolute duty, the failure to perform which would be negligence in law or per se, whereas at common law it would be a

question of fact, depending on circumstances, whether the omission to guard such places would or would not constitute negligence or want of reasonable care.

The statute is a wise police regulation, designed to protect human life and limb; and consequently courts ought not to adopt a strained construction that will impair its useful operation, but, on the other hand, they have no right by judicial legislation to extend its operations beyond what the legislature has enacted.

The only authorities relied on to support plaintiff's contention are Parker v. Barnard, 135 Mass. 116, McLaughlin v. Armfield, 58 Hun, 376, 12 N. Y. Supp. 164, and House v. Metcalf, 27 Conn. 631. The first is not at all in point. It appears that in that case both the lessor and lessee were made parties defendant, but it nowhere appears what were the terms of the lease as to the respective duties of the lessor and lessee. The only question decided or considered in that case was whether the plaintiff, a police officer, who, finding the doors open in the nighttime, entered the building for the purpose of inspecting the premises, in accordance with a rule of the police commissioners, was within the protection of the statute. The court carefully state that they had not considered the respective duties of the owners and of the occupants of the building as to the protection of the elevator well; that upon that inquiry the case was not before them.

McLaughlin v. Armfield is not the decision of the court of last resort. The opinion is very brief, cites no authorities, and gives no satisfactory reason for the conclusion arrived at. Moreover, the language of the statute there under consideration was, "any building occupied or *built to be occupied* as a manufactory," etc.; and it might with some reason be urged that the words italicized showed a legislative intention to impose the duty on the owner, who constructed a building designed for use as a factory, without regard to who subsequently occupied it. House v. Metcalf, supra, was a case where the owner erected a public nuisance upon his premises and then rented them, with the nuisance still existing, which was maintained by the tenant. Under a very familiar rule of law the lessor, who erected the nuisance, equally with the tenant, was liable. Hence, in my opinion, the case is not at all in point.

There is still another and very strong reason why the construction for which I contend should obtain. The statute is penal; an omission to comply with any of its requirements or provisions being declared a misdemeanor, punishable by fine or imprisonment. Hence it should be strictly construed. If the defendant had been prosecuted criminally, I think that a court would hesitate a long time before placing upon the statute the construction adopted by the majority opinion. But it cannot be given one construction in a civil action, and another in a criminal prosecution.

Finally, if it be held that the common-law rule as to who is liable does not continue to apply, we are left all at sea where to draw the line; for the statute itself furnishes no guide. For these reasons, I think the order appealed from should be reversed.

CANTY, J.

I concur with Justice MITCHELL.